IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| FRANCINE HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    4:19-cv-01081-LSC |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION**

## I.   Introduction

The plaintiff, Francine E. Hill ("Hill"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB"). Hill timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Hill was 53 years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 36.) She has an eleventh-grade education and a GED. (*Id.*) Her past work experiences include employment as a household appliance sales representative at Lowe's Home Improvement and as a pairer in hosiery mills. (Tr. at 34, 37, 245.)

Hill claims that she became disabled on December 9, 2016, due to heart problems, diabetes, high blood pressure, possible kidney failure, left-hand tendinitis, left-hand carpal tunnel syndrome, left shoulder problems, left knee rheumatoid arthritis, a cyst on the back of her left knee, plantar fasciitis in the left foot, hidradenitis suppurativa, peripheral artery disease, and edema in both legs and feet. (Tr. at 184, 199-205, 227.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's physical and mental medically determinable impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e).

The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Hill meets the insured status requirements of the Social Security Act through September 30, 2022. (Tr. at 20.) The ALJ further determined that Hill has not engaged in SGA since December 9, 2016, the alleged onset date of her disability. (*Id.*) Next, the ALJ found that Hill has the following medically determinable impairments: hypertension, diabetes mellitus, atypical chest pain/angina pectoris, minimal degenerative disc disease of the left knee and left ankle, a cyst on the left foot/plantar fasciitis in the left foot, hidradenitis suppurativa, peripheral artery disease, and edema in both legs and feet (*Id.*) However, the ALJ found these impairments or a combination of these impairments have not significantly limited (or are expected to significantly limit) Hill's ability to perform basic work-related activities for 12 consecutive months. (Tr. at 21.) Therefore, the ALJ determined that Hill does not have a severe impairment

or combination of impairments as defined by the regulations. (*Id.*) The ALJ concluded his findings by stating that Hill "has not been under a disability, as defined in the Social Security Act, from December 9, 2016, through the date of this decision." (Tr. at 23.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). Substantial evidence is "more than a scintilla" and is relevant evidence that a reasonable person would accept as adequate to support a conclusion that a claimant is or is not entitled to benefits. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  Discussion

Hill argues that the ALJ should have credited her subjective complaints of pain to find that her impairments in combination were "severe."

To be found disabled, Plaintiff had to demonstrate that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.5121, 416.921; Social Security Ruling(s) ("SSR"s) 88-28, 96-3p, and 96-4p. The burden of showing that an impairment or combination of impairments is "severe" rested at all times with Plaintiff, as the claimant. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

Hill's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th

Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of the plaintiff's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225-26. In evaluating the extent to which the plaintiff's symptoms, such as pain, affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a plaintiff's symptoms, (3) the plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the

plaintiff takes to relieve symptoms, and (8) any conflicts between a plaintiff's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit a plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). "The question is not . . . whether the ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Hill stated that she must lie down most of the day due to pain. (Tr. at 39, 45.) Hill also stated that she has bouts of chest pain and breathing difficulties stemming from unstable angina attacks three to four times per week. (Tr. at 41-42.) In addition, Hill uses an over-the-counter nitroglycerin spray to relieve the effects of the alleged attacks but states that the medication gives her "the worst headache[s]." (*Id.*) Hill also claims chronic back pain stemming from work related injuries sustained around

2014 at Lowes, which requires her to take hydrocodone every six hours and to lie down on the floor to relieve her pain. (Tr. at 37-39.) Furthermore, Hill claimed to suffer from diabetes, which is well controlled by medication but frequently aggravated by stress. (Tr. at 39-40.) Hill further claimed ongoing pain stemming from a March 15, 2012, surgery to excise her hidradenitis suppurativa. (Tr. at 262-67.) Finally, Hill alleged pain in her left arm, ankle, wrist and knee. (Tr. at 202, 274, 318, 324.)

The ALJ noted that the impairments causing Hill's medical conditions could reasonably be expected to cause her alleged symptoms, satisfying part of the pain standard. (Tr. at 23.) However, he found that Hill's statements concerning the intensity, persistence, and limiting effects of these alleged symptoms were not entirely credible by pointing to explicit evidence that is inconsistent with her subjective complaints. (*Id.*) The ALJ covered a variety of evidence to support his conclusion, including objective medical evidence, treatment history, and daily activities. (Tr. at 20-23.) Substantial evidence supports the ALJ's conclusion in this case.

### A.   Chest Pain

On November 21, 2016, Hill reported no chest pain, and no cough or chest congestion to Dr. Sanjeev Saxena. (Tr. at 349-51.) In 2017, Hill had a full cardiac

workup done, including carotid duplex imaging, transthoracic echocardiogram, a lecture cardiogram, nuclear stress test (myocardial perfusion test), renal artery duplex study, and a left heart catheterization with coronary artery angiography. (Tr. at 355-59, 365, 371-72, 383-88, 394-97.) The results of the cardiac workup were generally normal with no evidence of persistent edema or arterial disease that would result in limitations of any kind. (Tr. at 355, 363, 367-69, 383, 389-90.) In January 2017, Dr. Ravichandra R. Boyella, a cardiologist, interpreted Hill's symptoms of pain to be atypical but noted that Hill has significant risk factors of heart disease including age, post-menopausal, hypertension, diabetes, a family history of heart disease, and obesity. (Tr. at 370.) Dr. Boyella also noted that the results of Hill's left heart catheterization with coronary artery angiography indicated an unstable angina in March 2017. (Tr. at 383.) Therefore, Dr. Boyella recommended medical therapy and aggressive risk factor modifications including a no salt diet and weight loss. (*Id.*) Dr. Boyella did not note any limitations of any kind in Plaintiff's abilities. (Tr. at 361-411.) Hill began taking an over-the-counter nitroglycerin spray to treat her unstable angina. (Tr. at 387.) Hill states that she uses the nitroglycerin spray to relieve the symptoms of her unstable angina three to four times per week. (Tr. at 42.)

    Dr. Richard Whitney, the non-examining medical expert, reviewed the medical records and noted on April 12, 2017, that Hill's lungs and heart were

generally normal. (Tr. at 59-60.) Dr. Whitney opined that Hill's medical condition does not significantly affect her ability to carry out most routine activities and that her ability to work is not significantly affected. (Tr. at 64.) Dr. Whitney concluded that Hill does not meet the requirement for disability benefits. (*Id.*) The ALJ gave great weight to the opinion of Dr. Whitney because his opinion was supported by the objective imaging, cardiac testing, and other objective medical evidence. (Tr. at 23, 54-62.) The opinion of Dr. Whitney also supports the ALJ's decision that Plaintiff's testimony of pain was not entirely credible. *See Huntley v. Comm'r of Soc. Sec.*, 683 F. App'x 830, 833 (11th Cir. 2017) (holding that substantial evidence supported the ALJ's decision to assign the most weight to the opinion of a non-examining physician because the non-examining physician "explained his conclusion. . . with specific reasons, and his opinion was consistent with treatment records").

On April 9, 2018, Plaintiff complained of chest pain and shortness of breath to Dr. B.J. Patel. (Tr. at 439-41.) Dr. Patel noted that a chest inspection revealed normal expansion. (Tr. at 440.) In addition, Dr. Patel noted that Hill's respiratory efforts revealed even respirations without use of accessory muscles. (*Id.*) Lastly, Dr. Patel found that Hill's heart functions were normal. (*Id.*) Ultimately, objective medical evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints of chest pain.

### B. Back Pain

Hill's back pain was noted on a workup in preparation for an operation for bilateral reduction mammoplasty and excision of hidradenitis suppurativa from the sternum in 2012. (Tr. at 265.) Dr. Jorge I. de la Torra attributed Hill's back pain to ptosis of the breast. (Tr. at 267.) In this workup, there was no attribution of back pain to work-related injuries. (*Id.*) The reduction mammoplasty was expected to resolve Hill's back pain. (*Id.*) However, physical examinations following this operation ranging from 2014 to 2017 show no evidence of back pain or injury and note Hill's normal stance, gait, and musculoskeletal findings. (Tr. at 307, 317, 325, 336, 342, 353, 362, 363, 368, 392, 404-05, 410-11, 428-29, 445.)

Furthermore, Hill claimed to take hydrocodone every six hours to treat her back pain. (Tr. at 39.) Hill wrote that she was prescribed hydrocodone by Dr. Kimberly Gorman, a gynecologist, but did not include the date she was prescribed that medication. (Tr. at 247.) The record shows that Dr. Gorman recommended Hill continue using her home medication, which included hydrocodone on December 2, 2014. (Tr. at 294.) However, this examination was conducted due to Hill having gallstones which resulted in nausea and vomiting. (*Id.*) Dr. Gorman also noted that Hill was having abdominal pain. (Tr. at 307.) Dr. Gorman also examined Hill's musculoskeletal system and noted that Hill was negative for back pain or injury. (*Id.*)

The record does not show that Hill was prescribed any pain medication after March 7, 2018, despite her May 21, 2018, hearing testimony claiming she takes hydrocodone every six hours for back pain. (Tr. at 39, 439, 451.) The record indicates that Hill never sought treatment for her back pain after 2012 and was never prescribed hydrocodone for back pain. (Tr. at 264, 307, 317, 325, 336, 342, 353, 362-63, 368, 392, 404-05, 410-11, 428-29, 445.)

On February 2, 2017, Dr. Boyella found that the goals for treatment for Hill's chest pain did not require any invasive workups. (Tr. at 364.) Further, on March 22, 2017, Dr. Boyella found that Hill's musculoskeletal system was normal. (Tr. at 392.) Additionally, on the same date, Dr. Boyella noted that Hill's musculoskeletal system produced no muscle aches and was localized to one or more joints with no localized joint stiffness. (Tr. at 404.) Hill did not seek treatment for back pain during these physical examinations from the relevant period. (*Id.*) Hill also never claims to have needed a back brace, device, or back operation to correct her injury despite claiming to have worked for nearly two years with the alleged back injury. (Tr. at 38-39.)

### C.   Hidradenitis Suppurtiva

Hill also claimed ongoing pain stemming from the March 15, 2012, surgery to excise her hidradenitis suppurativa. (Tr. at 54-55.) This surgery predates Hill's alleged onset date of December 6, 2016, by more than four years. The objective

medical evidence of physical examinations following the March 15, 2012, hidradenitis suppurativa excision does not show any ongoing complications from the operation. (Tr. at 307, 317, 325, 336, 342, 353, 362, 363, 368, 392, 404-05, 410-11, 428-29, 445.) For instance, on March 12, 2015, Dr. Ashley Cole noted that Hill's skin was a normal color with no rashes, lesions, or cellulitis. (Tr. at 342.) On October 24, 2016, Dr. Cole noted that there was no swelling of the skin or increases in temperature. (Tr. at 325.) Dr. Boyella also reviewed Hill's symptoms on February 2, 2017, and March 22, 2017. (Tr. 361, 391.) He noted that there was no uncomfortable or irritating sensation with the skin and that there were no skin lesions. (*Id.*)

### D. Joint and Foot Pain

Hill also alleges chronic pain in her left ankle, foot, knee, shoulder, and wrist. (Tr. at 55.) Regarding Hill's alleged left ankle pain, x-rays of Hill's left ankle showed no acute osseous abnormality. (Tr. at 275.) Moreover, the ankle mortise and joint spaces were within normal limits with only minimal degenerative changes, which does not show evidence of limitations of any kind. (*Id.*)

As for left foot pain, on October 24, 2016, Hill reported to Dr. Cole that she had a left foot nodule for "a while" and that she "just wanted it looked at." (Tr. at 325.) Dr. Cole's examination of Hill's foot showed that she had a small, fibrotic-like soft tender nodule on the plantar surface of her left foot instep. (Tr. at 325-26.) But

Dr. Cole noted Hill can fully weight bear, can ambulate with only mild difficulty, that symptoms are moderate at worst, and that her exam was negative for acute changes or focal neuro deficits. (*Id.*) On January 26, 2018, Hailey Armstrong, a certified registered nurse practitioner ("CRNP"), noted that Hill had no motor deficits. (Tr. at 445.)

Similarly, Dr. Cole's examination of Hill's left knee on October 24, 2016, showed no acute fracture or significant bone abnormality. (Tr. at 22, 328.) Dr. Stephen Blackstock conducted an MRI of Hill's left knee on October 28, 2016, which showed only mild cartilage loss. (Tr. at 22, 347.) Subsequent x-rays of Hill's left knee conducted on January 26, 2018, were interpreted as showing posterior distal femoral spurring and decreased spacing. (Tr. at 448.) This interpretation is generally consistent with prior imaging studies that show only minimal findings of degenerative joint disease that do not show evidence of a limitation. (Tr. at 22, 328, 347, 448.)

Regarding Hill's alleged left shoulder and wrist pain, the ALJ noted that objective imaging studies and testing did not support any severe impairment. (Tr. at 22.) A wrist examination was conducted by Dr. Cole on April 4, 2016. (Tr. at 333.) X-rays demonstrated that Hill's "bones, joints, and soft tissue [were] within normal limits." (*Id.*) Dr. Eric Beck also conducted nerve conduction

velocity/electromyography testing (NCD/CMG) of Plaintiff's wrist and upper extremities on May 18, 2016. (Tr. at 323.) Dr. Beck noted that there was no electrodiagnostic evidence of carpal tunnel syndrome, ulnar or radial nerve entrapment, or generalized peripheral neuropathy or cervical radiculopathy. (*Id.*)

For the reasons noted above, the objective medical evidence is inconsistent with Plaintiff's subjective complaints of joint and foot pain and shows no functional limitations that would affect her capacity to work.

### E. Diabetes

Hill also alleges her diabetes is severely aggravated by stress. (Tr. at 40.) On January 26, 2018, nurse practitioner Hailey Armstrong noted that Hill's diabetes is well-controlled with prescribed Metformin and showed no evidence of limitations of any kind. (Tr. at 443, 450). *See Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (if an impairment can be treated effectively with medication, it is less likely to be considered disabling). Hill also states that she can handle stress "OK overall," which contradicts her allegations of frequent aggravating stress. (Tr. at 212.) An examination on January 25, 2018, notes that Hill stated her blood sugars were running well at home. (Tr. at 443.)

The mild nature of these impairments and the effectiveness of treatments undermine the severity of Plaintiff's subjective complaints. *See Crow v. Comm'r of*

*Soc. Sec.*, 571 F. App'x 802 (11th Cir. 2014) (finding the plaintiff's treatment history to be characterized by medication-monitoring appointments every few months, significant sustained improvement, and that the evidence discredited the plaintiff's subjective complaints of pain and an inability to work). Therefore, the ALJ cited to the objective evidence to show that Hill's condition improved and that she only received conservative treatment.

### F. Daily Activities

The ALJ also correctly noted that Plaintiff's daily activities may be considered when determining functional limitations and restrictions due to pain or other subjective symptoms. *See Foote*, 67 F.3d at 1561 (holding that the court must consider the entire record, including Plaintiff's daily activities, when determining whether substantial evidence supports the ALJ's decision). Hill is independent in her personal care and grooming, can drive a car, fix simple meals, do laundry, perform household chores, watch television, attend church weekly, and go grocery shopping. (Tr. at 203-10.) The ALJ concluded that these activities are not consistent with totally disabling symptoms and limitations. (Tr. at 23.) While the performance of sporadic or simple functions may not necessarily defeat a disability claim, the Eleventh Circuit has acknowledged the relevance of daily activities in these cases. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (holding that an ALJ may

consider daily activities in assessing a Plaintiff's credibility); *see also* 20 C.F.R. § 404.1529(c)(3) (specifically listing daily activities as a factor to consider in evaluating a claimant's credibility).

For the reasons mentioned above, the ALJ properly applied the pain standard. Specifically, the ALJ addressed Plaintiff's allegations of pain and explicitly provided substantial evidence that established a reasonable basis for rejecting Hill's testimony. *See Dyer*, 395 F.3d at 1212.

### IV. Conclusion

Upon review of the administrative record, and considering all of Hill's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. The motion to remand is due to be denied. A separate order will be entered.

**DONE** and **ORDERED** on September 1, 2020.

_____
L. Scott Coogler
United States District Judge

160704